UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                                                                  :
In re SINGULARITY FUTURE TECHNOLOGY          :      Case No. 22-cv-08160-LJL
LTD. LITIGATION                                                  :
---------------------------------------------------------------- X
                                                                  :
This Document Relates to:                                     :
                                                                  :
Hexin Global Limited, et al. v. Singularity            :
Future Technology, et al. 22-cv-08160                 :

St. Hudson Group, LLC, et al. v. Singularity
Future Technology, et al. 22-cv-10290
----------------------------------------------------------        X

---

## DEFENDANT YANG JIE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS WITH PREJUDICE

---

Of counsel and on the brief:
James J. Mahon, Esq. (JM5405)
Adam K. Gallagher, Esq. (AG9289)

On the brief
Samantha Lesser, Esq. (5757505)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................ 1

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ................................................................................... 4

LEGAL ARGUMENT .......................................................................................... 5

   I.     STANDARD ON A MOTION TO DISMISS ............................................ 5

       A.  Federal Rules of Civil Procedure ........................................................ 5
       B.  Private Securities Litigation Reform Act ("PSLRA") ........................... 6
       C.  Documents that a Court May Consider on a Motion to Dismiss ............. 7

  II.    BOTH OF THE COMPLAINTS THAT ARE THE SUBJECT OF THIS MOTION MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM COMMON LAW FRAUD ............................................................................................. 8

       A.  Plaintiffs Fail to Plead Reasonable Reliance, a Critical Element of a Common Law Fraud Claim. ........................................................... 9

       B.  Plaintiffs Fail to Prove Causation, another Critical Element of a Common Law Fraud Claim. ................................................................ 14

 III.   BOTH COMPLAINTS FAIL TO STATE CLAIMS UNDER SECTION 10 OF THE SECURITIES ACT AND THE ACCOMPANYING RULE 10b-5. ......................... 20

       A.  Both Plaintiffs Groups Have Failed to Exhibit a Material Misstatement or Omission. ................................................................................... 20

       i.   Material Misstatement or Omission ..................................................... 21

       ii.  The Plaintiffs Have Not Established a Duty To Disclose ........................ 22

       B.  Both Plaintiffs Groups have Failed to Properly Plead Scienter. ............ 26

 IV.   BOTH PLAINTIFFS' GROUPS HAVE FAILED TO PLEAD SUFFICIENT FACTS BASED ON INDEPENDENT INVESTIGATIONS, INSTEAD RELYING ON A REPORT OF A SHORT SELLER WITH A BASIS ON INADMISSIBLE FACTS. .......................................................................................... 27

       A.  The Hindenburg Short Seller Report was Based Solely on Unverified Information and Not Sufficient to Premise A Claim. ............................ 28

       B.  Neither Plaintiffs' Counsel Has Exhibited An Independent Investigation was Performed, and Each Complaint was based Solely on Hearsay and therefore Both Complaints are Insufficient ........................................ 30

  V.    THE ALLEGATIONS FOR LIABILITY UNDER SECTION 20(a) OF THE EXCHANGE ACT ARE ALSO INSUFFICIENT BECAUSE THERE IS NO UNDERLYING ADEQUATELY PLED VIOLATION OF SECTION 10 OR RULE 10b-5. ..................................................................................... 31

CONCLUSION ................................................................................................ 32

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

60223 Trust v. Goldman Sachs & Co.,
    540 F. Supp. 2d 449 (S.D.N.Y. 2007)..................................................................18

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).............................................................................................5

Ashland, Inc. v. Morgan Stanley & Co., Inc.,
    700 F.Supp.2d 453 (S.D.N.Y. 2010)................................................................10

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007)...............................................................................5, 6

In re Axis Capital Holdings, Ltd. Sec. Litig.,
    456 F. Supp.2d 576 (S.D.N.Y. 2006)................................................................23

Banque Franco-Hellenique de Commerce Intern. Et Maritime, S.A. v.
    Christophides,
    106 F.3d 22 (2d Cir. 1997)................................................................................10

Bartesch v. Cook,
    941 F. Supp.2d 501 (D. Del. 2013)...................................................................28

Basic, Inc. v. Levinson,
    485 U.S. 224 (1988)..........................................................................................21

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)............................................................................................5

Brock Capital Group v. Siddiqui,
    No. 21-cv-2070, 2022 WL 2047589 (S.D.N.Y. 2022) .............................................9

Bui v. Industrial Enters. Of America, Inc.,
    594 F. Supp. 2d 364 (S.D.N.Y. 2009).................................................................8

Central States, Southeast and Southwest Areas Pension Fund v. Federal Home
    Loan Mortg. Corp.,
    543 Fed. Appx. 72 (2d Cir. 2013)................................................................18, 19

In re China Organic Sec. Litig.,
    No. 11-cv-8623, 2013 WL 5434637 (S.D.N.Y. 2013) .........................................16

DoubleLine Capital LP v. Odebrecht Finance Ltd.,
    323 F. Supp.3d 393 (S.D.N.Y. 2018)................................................................15

In re Draft Kings Sec. Litig.,
    No. 21-cv-5739, 2023 WL 145591 (S.D.N.Y. 2023) ...........................................30

Dura Pharm., Inc. v. Broudo,
    544 U.S. 336 (2005)..........................................................................6, 15, 19, 27

ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,
    553 F.3d 187 (2d Cir. 2009)............................................................................26, 27

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,
    343 F.3d 189 (2d Cir. 2003)............................................................................9, 14, 15

In re FBR Securities Litig.,
    544 F. Supp.2d 346 (S.D.N.Y. 2008)........................................................................24

Finn v. Barney,
    471 Fed. Appx. 30 (2d Cir. 2012) ...............................................................................7

Ganino v. Citizens Utilities Co.,
    228 F.3d 154 (2d Cir. 2000)......................................................................................21

Glazer v. Formica Corp.,
    964 F.2d 149 (2d Cir. 1992)......................................................................................22

Harris v. AmTrust Fin Servs., Inc.,
    135 F. Supp.3d 155 (S.D.N.Y. 2015).........................................................................28

In. re Omnicom,
    597 F.3d 513 ........................................................................................................15, 16

In re Initial Public Offering Sec. Litig.,
    544 F. Supp.2d 277 (S.D.N.Y. 2008)....................................................................16, 17

In re Initial Public Offering Securities Litig.,
    383 F. Supp.2d 566 .....................................................................................................7

In re ITT Educ. Servs, Inc.,
    859 F. Supp. 2d 572 (S.D.N.Y. 2012)........................................................................23

In re Keyspan Corp. Securities Litig.,
    383 F. Supp.2d 358 (E.D.N.Y. 2003) ...................................................................25, 31

Lazard Freres & Co. v. Protective Life Ins. Co.,
    108 F.3d 1531 (2d Cir. 1997).....................................................................................10

In re Livent, Inc. Securities Litig.,
    151 F. Supp.2d 371 (S.D.N.Y. 2001)...........................................................................1

iii

Long Miao v. Fanhua, Inc.,
    442 F. Supp.3d 774 (S.D.N.Y. 2020)..................................................................28, 29, 30

In re Longtop Financial Tech. Security Litig.,
    910 F. Supp.2d 561 (S.D.N.Y. 2012)................................................................................28

In re Marsh & Mclennan Cos., Inc. Sec. Litig.,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006).....................................................................21, 22, 23

In re MBIA Securities Litig.,
    700 F. Supp.2d 566 (S.D.N.Y. 2010)...............................................................................20

*Menaldi v. Och-Ziff Capital Mgmt. Group LLC*,
    164 F. Supp.3d 568 (S.D.N.Y. 2016)...............................................................................25

In re Moody's Corp. Securities Litig.,
    599 F. Supp. 2d 493 (S.D.N.Y. 2009)..............................................................................22

In re Moody's Corp. Securities Litig.,
    612 F. Supp.2d 397 (S.D.N.Y. 2009)...............................................................................19

Mucha v. Volkswagen Aktiengellschaft,
    540 F. Supp.3d 269 (E.D.N.Y. 2021) ..........................................................................24, 25

Novak v. Kasaks,
    216 F.3d 300 (2d Cir. 2000)........................................................................................22, 29

In re Omnicom Grp, Inc. Securities Litig.,
    597 F.3d 501 (2d Cir. 2010)............................................................................................17

Rich v. Maidstone Fin., Inc.,
    No 98-cv-2569, 2001 WL 286757 (S.D.N.Y. 2001) ...........................................................31

In re Sanofi Securities Litig.,
    155 F. Supp.3d 386 (S.D.N.Y. 2016)...................................................................... *passim*

Terra Securities ASA Kokursbo v. Citigroup, Inc.,
    820 F. Supp. 2d 541 (S.D.N.Y. 2011)............................................................................8, 9

In re Time Warner Securities Litig.,
    9 F.3d 259 (2d Cir. 1993)...............................................................................................23

**Statutes/Other**

15 U.S.C. § 78j(b) ....................................................................................................................1

15 U.S.C. § 78t.........................................................................................................................1

18 U.S.C. § 3491.....................................................................................................................29

Exchange Act Section 10(b) ....................................................................................1, 3, 5, 8, 20, 31

Exchange Act Section 20(a) ..............................................................................................1, 3, 31

Fed. R. Civ. P. 9(b) ........................................................................................................1, 5, 6, 8

Fed. R. Civ P. 12(b)6 ....................................................................................................1, 5, 7, 21

Fed. R. Civ. P. 44(a)(2) ..............................................................................................................29

Private Securities Litigation Reform Act.......................................................1, 3, 5, 6, 7, 26, 28

## INTRODUCTION

The instant matter shows the hallmarks of a classic "strike suit of dubious merit" by a disgruntled group of investors in an attempt to obtain a speedy settlement. E.g., In re Livent, Inc. Securities Litig., 151 F. Supp.2d 371, 418 (S.D.N.Y. 2001).  The defendants refused to respond to the invitation and instead move the court for dismissal.

Before the Court is Defendant Yang Jie's Motion to Dismiss with prejudice the actions on the part of both the Hexin Plaintiffs and the St. Hudson Plaintiffs (at times referred to as "Plaintiffs" or "Plaintiffs Groups") pursuant to Fed. R. Civ P. 12(b)6), Fed. R. Civ. P. 9(b), and the Private Securities Litigation Reform Act (the "PSLRA") 15 U.S.C. § 78u-4.  Each of the Hexin and St. Hudson Complaints (the "Complaints") are Eight Count Complaints alleging a host of causes of action arising out of two separate Securities Purchase Agreements entered into between the Plaintiffs and Singularity.

Both Plaintiffs groups allege that Mr. Jie was a corporate officer with Singularity, and both Plaintiffs Groups allege: 1) was involved in a conspiracy to commit common law fraud, 2) violated 15 U.S.C. § 78j(b) (commonly known as Section 10(b) of the Exchange Act) and the accompanying regulation implemented as 17 C.F.R. § 240.10b-5 (commonly known as "Rule 10b-5"), and 3) violated 15 U.S.C. § 78t (commonly known as "Section 20A of the Exchange Act"). There are obvious defects and deficiencies in both Complaints filed by the Hexin and St. Hudson Plaintiffs.  Therefore, Plaintiffs are requesting that this Court grant the instant motion and dismiss both Complaints with Prejudice.

## PRELIMINARY STATEMENT

The instant matter is a shareholder strike suit brought by the Hexin and St. Hudson Plaintiffs alleging common law fraud, various securities violations, and individual liability arising

1

from separate transactions involving the private placement in stock of Singularity Future Trading Corp f/k/a Sino Global Shipping ("Singularity").  However, these actions do not sufficiently state any causes of action, in part, due to the Complaints' reliance on rank hearsay.

Defendant Mr. Jie has exhibited that the Plaintiffs do not stand on firm ground, if any, to proceed with a claim, thus the claims must be dismissed.  The Plaintiffs claims are deficient and devoid of any elements of common law fraud or securities law violations under Section 10(b) or Rule 10b-5.  The Plaintiffs have failed to prove any of the elements of either claim including loss causation, reasonable reliance, omission or misrepresentation, and scienter.

In the instant matter, both the Hexin and St. Hudson Plaintiffs allege that Mr. Jie is individually liable for common law fraud because of an alleged criminal history in China, alleged fraudulent activity relating to a reverse merger, and failure to disclose publicly available information in the form of purchase warrants that were duly disclosed by the proper filing of 8-K Forms.  The Plaintiffs allege that Singularity and Mr. Jie had a duty to disclose alleged criminality arising out of Mr. Jie's business interests in China, and had a duty to disclose Mr. Jie's involvement in a failed reverse merger to either the Securities and Exchange Commission, or to Plaintiffs directly.  The plaintiffs allege that this information could not have been reasonably found with due diligence, and concede they had a duty of due diligence, this duty of due diligence was also referenced in both Securities Purchase Agreements.

Plaintiffs allege that but for this non-disclosure, they would not have invested in Singularity, that Mr. Jie was the cause of Singularity's stock increasing in value, and that the release of a report by Hindenburg Research on May 5, 2022 caused Singularity's stock to decrease in value, causing a loss to Plaintiffs.  Plaintiffs thus brought a suit alleging three claims against

2

Mr. Jie for common law fraud, securities violations under Section 10(b) and Rule 10b-5, and individual liability under Section 20(a) of the Exchange Act.

To address loss causation, Plaintiffs acknowledged in their Complaints and in the securities purchase agreements that they had a duty to perform due diligence on Mr. Jie, and could not have reasonably relied on statements or omissions.  The Complaints show a total failure to perform due diligence when admissible evidence is analyzed.  First off, each of the three warrants were filed by then Sino Global with the Securities and Exchange Commission and the warrants each indicated the expiration date, which would have placed the Plaintiffs on notice there were outstanding warrants.  Further, these were not material misrepresentations or omissions.  Second, there is a public electronically filed court document in New York Supreme Court in the form of a complaint that contains information related to Mr. Jie's alleged criminality and Mr. Jie's prior business venture in the form of a reverse merger.  This information was widely available, despite Plaintiffs' allegations that they could not have discovered the information with reasonable diligence.

As to loss causation, Plaintiffs have failed to show a reason why Singularity's stock substantially dropped before the release of the Hindenburg Report with information on Mr. Jie.  Nor do Plaintiffs explain why the Hindenburg Report was not just a negative re-publication of information already available to the public, which does not constitute an actionable disclosure.  Furthermore, Plaintiffs do not meet the pleading standard to distinguish between the different factors that led to a stock's increase in value when a stock loses substantially all its value before a corrective disclosure.  Thus, Plaintiffs cannot maintain causes of action for common law fraud or violations of the securities laws on this point alone.

Additionally, Plaintiffs complaints are devoid of any hint of scienter required under the Private Securities Litigation Reform Act.  Furthermore, Plaintiffs do not establish a duty of

3

disclosure of the alleged prior action on the part of Mr. Jie, partly because the allegations of $3.5 million dollar failed reverse merger were brought in a lawsuit that was discontinued before judgment (not triggering a duty to disclose under the Stock Purchase Agreements).  Furthermore, there was no duty to disclose information that was already on file with the SEC, and no duty to disclose uncharged allegations of criminal conduct, which Plaintiffs consequently have not pled sufficient facts to sustain a hint of a claim.  The term "uncharged" certainly attaches to the allegations, as Mr. Jie's counsel retained a China based law firm to perform an investigation that returned a result that Mr. Jie was never the subject of nor was he charged in connection with the allegations that Plaintiffs allege underpin their causes of action for omission or misrepresentation.

Furthermore, attorneys have a duty to perform an independent investigation when allegations are solely based on short seller reports (conveniently labeled as corrective disclosures).  Here, both Plaintiffs' attorneys have clearly exhibited that they did not perform an independent investigation, if any at all.  In fact, defense counsel for Mr. Jie took the expense of retaining a China based law firm to investigate the truth of any of the allegations made in the Hindenburg Report.  The Report is the polar opposite of the allegations made in both Plaintiffs' Complaints, and shows the dangers of relying on rank hearsay to bring a lawsuit.  Thus, both Plaintiffs groups have failed to plead any of the elements to sustain causes of action for common law fraud or violations of Section 10(b) or Rule 10b-5.  As no claim has been pled under Section 10(b) or Rule 10b-5, a claim for individual liability under Section 20 cannot survive.  Therefore, the Court should grant the instant motion to dismiss and dismiss both Plaintiffs' complaints with prejudice.

## **STATEMENT OF FACTS**

For the sake of brevity, Defendant Yang Jie (hereinafter referred to "Defendant" "Yang Jie" or "Mr. Jie") is relying on the Affirmation of James J. Mahon dated February 9, 2023

4

(hereinafter referred to as the "Mahon Aff.") as their statement of facts.  Therefore, that Affirmation is incorporated by reference as if fully set forth herein.  The instant memorandum of law is being submitted in support of Defendant's motion to dismiss with prejudice both the Hexin and St. Hudson Plaintiffs' Complaints pursuant to Fed. R. Civ. P. 12(b)(6) Fed. R. Civ P. 12(b)6), Fed. R. Civ. P. 9(b), and the Private Securities Litigation Reform Act (the "PSLRA") 15 U.S.C. § 78u-4.

## LEGAL ARGUMENT

### I.    STANDARD ON A MOTION TO DISMISS

#### A.  Federal Rules of Civil Procedure

As a primary matter, Fed. R. Civ. P. 12(b)(6) provides that a complaint that fails to state a claim is subject to dismissal upon a defendant's motion asserting that defense.  For a Complaint to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must find that the complaint plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Two years after Twombly was decided, the Supreme Court revisited the pleadings standards and chose to define facial plausibility as "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009).  However, the same is not true where legal conclusions are pled, in fact, courts should not provide deference to legal conclusions.  Iqbal, supra.  Complaints are subject to dismissal where "the allegations in the complaint, however true, could not raise a claim of entitlement to relief."  Twombly, supra. at 558.

Complaints with allegations of securities fraud are "subject to heightened pleading requirements that plaintiffs must meet to survive a motion to dismiss."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).  Here, a court must whether a plaintiff satisfies

the pleading requirement of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act. Id. Of course, Fed. R. Civ. P. 9(b) "requires that 'the circumstances constituting fraud…shall be pled with particularity." Id. (quoting Fed. R. Civ. P. 9(b). In cases of misstatements, the complaint "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Id. (citing Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000). "Plaintiffs 'must demonstrate with specificity why and how' statements were false and misleading." Sanofi Securities Litig., supra. at 398 (quoting Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004). "This pleading constraint serves to provide the defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, **and protect him from strike suits.**" ATSI Commc'ns, Inc., 493 F.3d at 99 (citing Rombach, 355 F.3d at 171) (emphasis added).

### B. Private Securities Litigation Reform Act ("PSLRA")

The Supreme Court has stated that the PSLRA[1], "insists that securities fraud complaints 'specify' each misleading statement; that they set forth facts 'on which [a] belief that a statement is misleading was 'formed'; and that they 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. § 78u-4(b)(1), (2)). The statutory "state of mind" component requires securities litigation plaintiffs to plead "particular allegations giving rise to a strong inference of scienter." In re Sanofi Securities Litig., supra. (quoting ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). The strong inference of scienter "must be more than merely plausible or reasonable—it must be cogent

---

[1] 15 U.S.C. § 78u-4

and at least as compelling as any opposing inference of nonfraudulent intent." Id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007) (internal quotations omitted). Here, both Complaints fail to meet the standards of the PSLRA standards, the Hexin Complaint is based solely on two lines, while the St. Hudson Complaint makes an effort to comply with the PSLRA, but falls short. Thus, both the Hexin and St. Hudson Complaints are defective on these grounds alone. However, there are additional defects in each of the Complaints that are fatal to both Plaintiffs' claims against Mr. Jie.

### C.  Documents that a Court May Consider on a Motion to Dismiss

Unlike the traditional Rule 12 motion, in securities litigation cases, "a court 'may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to plaintiff and upon which it relied in bringing the suit." In re Sanofi Securities Litig., 155 F. Supp.3d 386, 397 (S.D.N.Y. 2016) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In addition, a District Court is also permitted to "take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment." In re Initial Public Offering Securities Litig., 383 F. Supp.2d 566, 574 (quoting Ganino v. Citizens Utilities Co., 223 F.3d 154, 167 n.8 (2d Cir. 2000) (other citations omitted). Furthermore, documents submitted in other litigations are also permissible documents for a Court to review on a motion to dismiss, solely for the fact that the statements were made or information was publicly available, but not for the truth of the matter asserted. Finn v. Barney, 471 Fed. Appx. 30, 32 (2d Cir. 2012).

In the instant matter, Defendant offers several pieces of admissible evidence that can be considered by this Court including numerous filings with the Securities and Exchange Commission

7

(the "SEC"), documents submitted to the Supreme Court of the State of New York, New York County in the action titled <u>Shanghai Nonobank Financial Serv. Co. Ltd. v. Yang Jie</u> under index number 653834/2018, a report by Peabody Street Research which was referenced in each of the Complaints, and a report by Hindenburg Research, a short seller, also referenced in each of the Complaints.  Each of the documents submitted by the Defendant can be rightfully considered by this Court in the instant motion.

## II.    BOTH OF THE COMPLAINTS THAT ARE THE SUBJECT OF THIS MOTION MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM COMMON LAW FRAUD.

To prevail on a common law fraud claim in New York, a plaintiff must allege: "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." <u>Terra Securities ASA Kokursbo v. Citigroup, Inc.</u>, 820 F. Supp. 2d 541, 545 (S.D.N.Y. 2011) (citing <u>Haggerty v. Ciarelli & Dempsey</u>, 374 Fed. Appx. 92, 94 (2d Cir. 2010) (citing <u>Eurycleia Partners, LP v. Seward & Kissel, LLP</u>, 12 N.Y.3d 553 (2009)).  Furthermore, common law fraud claims must also satisfy the heightened pleading requirements for fraud under Fed. R. Civ. P. 9(b).  <u>Id.</u> (citing <u>Abercrombie v. Andrew College</u>, 438 F.Supp.2d 243, 274 (S.D.N.Y. 2006).    The elements of common law fraud and claims under Section 10(b) and Rule 10b-5 are substantially similar and follow the same analysis.  <u>Bui v. Industrial Enters. Of America, Inc.</u>, 594 F. Supp. 2d 364, 373 (S.D.N.Y. 2009).  For these reasons, the elements of reliance and causation are analyzed in the context of common law fraud, and the elements of scienter and material misrepresentation and omission are analyzed in the arguments in Section III under the analysis of Plaintiffs' Section 10 and Rule 10b-5 claims.

## A. Plaintiffs Fail to Plead Reasonable Reliance, a Critical Element of a Common Law Fraud Claim.

In New York, a plaintiff pleading claims for common law fraud must allege reasonable reliance on a material misrepresentation, and demonstrate "some basis for it to have relied on the alleged misstatement or omission." Terra Securities, supra. at 545. On a motion to dismiss, the court is permitted to "consider the entire context of the transaction, including…the sophistication of the parties, and the content of any agreements between them." Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003). In fact, "[A]nalysis of the reasonableness of reliance is properly considered at the motion to dismiss stage because the standard is an objective one." Brock Capital Group v. Siddiqui, No. 21-cv-2070, 2022 WL 2047589 at *4 (S.D.N.Y. 2022) (citing Harsco Corp v. Segui, 91 F.3d 337, 341-47 (2d Cir. 1996); Phoenix Cos., Inc. v. Concentrix Ins. Admin. Solutions Corp., 554 F. Supp.3d 568, 595-98 (S.D.N.Y. 2021); Terra Secs. ASA Konkursbo v. Citigroup, Inc., 740 F. Supp.2d 441, 449 (S.D.N.Y. 2010)). "In assessing the reasonableness of a plaintiff's alleged reliance, [courts] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." Emergent Cap. Inv. Mgmt., supra. at 195. "Additionally, where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations." Brock Capital Group., supra. at *3 (quoting Stuart Silver Assocs., Inc. v. Baco Dev. Corp., 665 N.Y.S.2d 415 (1st Dept. 1997). Where justifiable reliance is alleged, the courts require a level of diligence, and "[w]hile the law does not require that a defrauded party go to the ends of the earth to discover the falsity of a statement, patent foolishness is not

excused." Banque Franco-Hellenique de Commerce Intern. Et Maritime, S.A. v. Christophides, 106 F.3d 22, 26-27 (2d Cir. 1997).

"The Second Circuit has held that, as to the element of reliance, '[a]n investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth.'" Ashland, Inc. v. Morgan Stanley & Co., Inc., 700 F.Supp.2d 453, 469 (S.D.N.Y. 2010) (quoting Brown v. E.F. Hutton Group, Inc., 991 F.2d 1020, 1032 (2d Cir. 1993)). "Where the investor knows that he or she is in a position to acquire additional information, but does not inquire, the Second Circuit has found that the duty to exercise 'minimal diligence' renders the investor's reliance unreasonable." Ashland, Inc., supra. (quoting Starr v. Georgeson Shareholder, Inc., 412 F.3d 103, 109 (2d Cir. 2005)). "It is well established that where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1541 (2d Cir. 1997) (internal quotations omitted).

Each of the Plaintiffs concede, in their complaints, that they held a duty of due diligence: "Plaintiffs' reliance on each of the foregoing misstatements and omissions was both reasonable and justified because they could not have discovered the truth with reasonable diligence." Hexin Compl.Mahon Aff. **Exhibit A** ¶94; St. Hudson Compl. Mahon Aff. **Exhibit C** ¶103. Thus, the Plaintiffs concede they each held a duty of due diligence, and based on the record, that information would have been able to be found in a short period of time, including through the SEC filings, and documents filed in other litigations where Mr. Jie was a named defendant. Furthermore, each Plaintiffs Group warranted in their respective stock purchase agreements, first in Section 2.2(d) that

> The purchaser understands that its investment in the Securities involves a significant degree of risk.  The Purchaser further represents to the Company that the Purchaser's decision to enter into this Agreement has been **based solely on the independent evaluation of the Purchaser and its representatives.**

Mahon Aff. **Exhibits B and D** (emphasis added).

Furthermore, in Section 2.2(l) of the Stock Purchase Agreements, each of the Plaintiffs Groups further represented and warranted that:

> Such purchaser has **independently evaluated the merits of its decision to purchase Securities pursuant to this agreement, <u>and such Purchaser confirms that it has not relied on the advice of any other person's business and/or legal counsel in making such decision</u>…The Company has recommended to the Purchaser that Such Purchaser obtain its own professional advisors.  Such Purchaser has consulted such legal, tax and investment advisors as it, in its sole discretion…**

<u>Id.</u> (emphasis added).

Thus, there was a contractual warranty of due diligence, as well as an acknowledgement of said duty in each of the Complaints.

### The Warrants Complained of By Each the Hexin and St Hudson Plaintiffs

Turning to the facts that are subject to the common law fraud and 10b-5 allegations in each Complaint, each Plaintiffs Group pleads that Singularity had outstanding warrants issued on February 10, 2021, February 11, 2021, and March 14, 2014 that were allegedly concealed, and each of the Plaintiffs discovered only after Singularity filed a Form 8-K on January 6, 2022. Mahon Aff. Hexin Compl. **Exhibit A** ¶¶40, 77; St. Hudson Compl. **Exhibit C** ¶¶ 48, 86-87.  Both Plaintiffs groups allege that, somehow, they were damaged and defrauded, yet fail to even acknowledge that 1) each of the warrants were available on the Securities and Exchange Commission's Edgar docket for review through duly and timely filed Form 8-K for each of the three warrants, and 2) each of the warrants on the SEC website contained the agreement entered

into along with the model warrant that exhibited the expiration date of each warrant, which would have shown that each warrant was still executable by the named recipients.  Mahon Aff. **Exhibits OO, PP, and QQ**.  It would have been apparently clear to each Plaintiffs Group, at that time, that there were outstanding warrants. Thus, the standard of justifiable reliance related to the warrants would not be ascertainable for failure to perform due diligence.

### *Mr. Jie's Alleged Criminal Background*

Each of the respective Plaintiffs Groups alleges that there were further misdeeds and missteps on the part of Singularity and, by extension, Mr. Jie in relation to Mr. Jie's prior business ventures and his alleged history of criminality in China, including open cases.  Hexin Compl. Mahon Aff. **Exhibit A ¶¶ 44-51;** St. Hudson Compl. Mahon Aff. **Exhibit C ¶¶ 52-55**.  However, this information was already in the public spectrum and available, at a very minimum, from an English language source cited by Peabody Street Research, in their report, which would have been easily discoverable.  Mahon Aff., **Exhibit E**.

To Mr. Jie's alleged criminal background, 1) the alleged diversion of $3.5 million in the reverse merger transaction and 2) the alleged criminal allegations from China were both reasonably available in recent litigation filings that were electronically filed; the Hindenburg Report surely was not the first notice of these actions, unlike each of the Plaintiffs Groups allegations.

Both of these allegations were publicly available in 2018 through a lawsuit titled Shanghai Nonobank Financial v. Yang Jie filed in New York County Supreme Court under Index Number 653825/2018.  Mahon Aff. **Exhibit BB.**  The 2018 Shanghai Nonobank complaint tied Mr. Jie to the failed $3.5 million-dollar reverse merger that each of the Plaintiffs allege they could not have reasonably discovered, but for the Hindenburg Report, inferring that the arbitration decision relied upon by Hindenburg was the "be all end all."  See Mahon Aff. **Exhibit A ¶¶ 49-51**; **Exhibit C ¶¶**

12

**54-55.**  Yang Jie was the first named Defendant in the <u>Shanghai Nonobank</u> cause of action, which was electronically filed, thus a search of Mr. Jie's name in the New York State E-Courts or ECF system would have revealed the information relating to that complaint.  Mahon Aff. **Exhibit BB.**  However, it is even more troubling that both Plaintiffs Groups allege there was a non-disclosure of the information related to the $3.5 million-dollar failed reverse merger, with the allegation that the allegations resulted in an open judgment, order, or decree against Mr. Jie.  This is the second indication of a lack of due diligence on the part of the Plaintiffs' counsels which is exemplified by complete reliance on hearsay evidence to file a complaint.  If even a modicum of due diligence were performed, it would have been discovered that the <u>Shanghai Nonobank</u> cause of action was discontinued in 2020, prior to Mr. Jie's tenure at Singularity.  Mahon Aff. **Exhibit CC.**  Thus, proving that Mr. Jie's and Singularity's disclosures of Mr. Jie's history did not even need to be disclosed, as the information was available to the public, and therefore there is no proper factual basis for **any** fraud allegations against Mr. Jie.  On this score, this information would not have been properly includible on a Form 8-K, despite the allegations pled in the Complaints related to the November 2021 Form 8-K announcing Mr. Jie's ascent to CEO of Singularity.  Mahon Aff,. **Exhibit A ¶52; Exhibit C ¶56.**

Furthermore, the <u>Shanghai Nonobank</u>  2018 complaint also sets forth allegations relating to Mr. Jie's alleged criminal past in China, stating, in paragraph 31, that "[i]n mid-December 2017, China Central Television, the predominant state broadcaster in the PRC, reported that Jie was under criminal investigation…in connection with the theft of 1.9 billion RMB (the equivalent of approximately 300 million U.S. Dollars) from over 20,000 investors through fraudulent securities transactions intended to raise capital for Tianhe Technology Co., Ltd.  Jie was reported to be the main suspect in the criminal investigations and was being actively sought by PRC

13

authorities." Mahon Aff. **Exhibit BB ¶32.** Thus, the Hindenberg Report was not the source of this information either, and some reasonable diligence would have discovered the existence of this evidence.[2]

It is suspect that information from the Shanghai Nonobank suit was notably absent from the Hindenburg Report, possibly because of reliance issues in a potential suit, which could create problems with the suit alleged by plaintiffs in both cases. Regardless, it is clear that both sets of Plaintiffs acknowledge, concede, and plead in their Complaints that they had a duty of due diligence, and based on publicly available information from SEC filings and judicially noticeable court documents, that Plaintiffs' reliance claims fail for the lack of due diligence. Thus, each of the Complaints should be dismissed with prejudice for failure to perform minimal due diligence.

### B.  Plaintiffs Fail to Prove Causation, another Critical Element of a Common Law Fraud Claim.

There are two factors of causation in a claim for damages arising out of common law fraud and violations of SEC Rule 10b-5: Transactional Causation and Loss Causation. The Second Circuit has stated that loss causation and proximate cause were similar, noting "the proximate cause element of common law fraud requires that plaintiff adequately allege a causal connection between defendants' non-disclosures and the subsequent decline in the [value of securities.]" Emergent Capital Inv. Mgmt., supra. at 197. Loss causation…is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." Id. (citing Suez Equity Investors, LP v. Toronto-Dominion Bank, 250 F.3d 87, 96 (2d Cir. 2001)). "[Courts] have often compared loss causation to the tort law of proximate cause, "meaning

---

[2]   As discussed below in this brief, counsel to Mr. Jie engaged legal counsel in China who performed a thorough investigation and found that there were no charges found and no criminality on the part of Mr. Jie. Therefore, this is additional evidence showing that the allegations in the Hindenburg Report and in both Plaintiffs' Complaints would **not** have been properly includable on a Form 8-K. Mahon Aff. **Exhibit RR**.

14

that the damages suffered by plaintiff must be a foreseeable consequence of any misrepresentation or material omission." Id. (citing Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 179 (2d Cir. 2001). "Loss causation in the context of a private securities fraud action refers to a causal connection between the material misrepresentation and the loss." DoubleLine Capital LP v. Odebrecht Finance Ltd., 323 F. Supp.3d 393, 456 (S.D.N.Y. 2018) (internal citations and quotations omitted). Thus, this branch of causal analysis applies to each the common law fraud and securities violation claims.

In the instant matter, the Plaintiffs pled, in Hexin, that "Plaintiffs were damaged by paying too much for the shares," in St Hudson, the complaint lends an inference that based on the available information, the Plaintiffs paid an inflated price for the shares. As a primary basis, mere allegations that the price was inflated as a basis of loss causation cannot survive a motion to dismiss. Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005).

Both Complaints also claim the market dropped after the Hindenburg Report was released. In a loss causation case, Plaintiffs must allege that the subject of the alleged statement or omission was the actual cause of the loss suffered. DoubleLine Capital, supra. Loss causation can be pled in one of two ways a) that "the existence of the cause-in-fact on the ground that the market reacted negatively to a corrective disclosure of the fraud" or b) "that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." Id. (internal citations and quotations omitted).

For loss causation on a materialization of the risk theory, plaintiffs must plead facts that exhibit "the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." In. re Omnicom, 597 F.3d 513 (quoting ATSI, 493 F.3d 107). Here, Plaintiffs must prove that the alleged omissions, in this case, are "the proximate cause of an

22966141v.1

investment loss if the risk that caused the loss was within the zone of risk concealed by misrepresentations."  Id.  "The zone of risk is determined by the purposes of the securities laws, i.e., to make sure that buyers of securities get what they think they are getting."  Id.

"In order to plead corrective disclosures, plaintiffs must plausibly allege a disclosure of the fraud by which the available public information regarding the company's financial information [was] corrected…and that the market reacted negatively to the corrected disclosure."  Barclays, 750 F.3d 233.  When a complaint alleges misstatements and omissions unveiled by a corrective disclosure, "a plaintiff must point to a statement that, because it corrected a prior falsehood, precipitated a change in the security's price causing his loss."  In re China Organic Sec. Litig., No. 11-cv-8623, 2013 WL 5434637 at *7 (S.D.N.Y. 2013).  Here, there was no correction, because as analyzed above in Section II-A, supra., the information alleged to have been the cause of the loss (republished in the Hindenburg Report) was on the public market and available prior to Mr. Jie's tenure as Chief Executive Officer, in fact, the allegations regarding alleged criminality were available, as well as allegations regarding the failed reverse merger, and the alleged warrants that are the subject of an independent cause of action.  Thus, the information was absolutely available to each Plaintiffs Group prior to entering into the agreement, under which each acknowledged a duty of due diligence, and that said duty acknowledged and warranted by the Plaintiffs Groups in the Stock Purchase Agreements.

As a primary matter, it is theorized that the efficient capital market hypothesis "tells us that our existing markets for securities produce prices that (1) rapidly, if not instantaneously, reflect all available information; and (2) absorb this information in a rational way producing trading prices."  In re Initial Public Offering Sec. Litig., 544 F. Supp.2d 277, 288 (S.D.N.Y.

16

2008).  Therefore, "the price of security in a functioning market accurately reflects its value, given the information available to the public.).  Id.

Much like the current matter, with a re-publication of information to the market by Hindenburg Research, the Second Circuit encountered a similar scenario in In re Omnicom Grp, Inc. Securities Litig., 597 F.3d 501 (2d Cir. 2010).  In that case, the Second Circuit faced a company that had previously disclosed information (information already on the market) one year prior to a negative news report from the Wall Street Journal regarding an accounting method that was already publicly disclosed.  The Second Circuit described the news report stating "[w]hat appellant has shown is a negative characterization of already-public information…A negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalist's opinions."  Id. at 512 (citing Teacher's Ret. Sys. Of La. V. Hunter, 477 F.3d 162, 187-88 (4th Cir. 2007); In re Merck & Co. Sec. Litig., 432 F.3d 261, 269-70 (3d Cir. 2005)).

In the instant matter, the Hindenburg Report was not the first report or any groundbreaking reporting of any information that was not already publicly available.  In fact, as to Mr. Jie, the outstanding warrants were already in the market through prior SEC disclosures, with each warrant having an expiration date that was still valid.  Furthermore, Mr. Jie was never charged with a criminal offense, and even if the allegations of activity in China were of some import, the issue here is that a prior litigation had already revealed this information to the market.  There was no real corrective disclosure, and in fact, the Hindenburg Report was merely a republication of that information with a negative connotation, which does not constitute a corrective disclosure at all.  The publication was made by a short seller with a clear motive: financial advantage.  Thus, allegations related to loss-causation also fail here.

17

Courts, including the Second Circuit, have also looked to share price related to loss causation to determine whether the share price accurately reflects a reaction to a corrective disclosure based upon a materialization of the risk theory.  The proper inquiry is whether the loss in value of stock was "causally related by the claimed misrepresentation."  60223 Trust v. Goldman Sachs & Co., 540 F. Supp. 2d 449, 460 (S.D.N.Y. 2007).

The 60223 Court encompassed on an analysis of the share value to identify whether the materialization of the loss truly was the cause of the loss.  Id.  This theory is in line with Second Circuit precedent noting that in order to establish loss causation, "a plaintiff must plausibly allege 'that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security.'"  Central States, Southeast and Southwest Areas Pension Fund v. Federal Home Loan Mortg. Corp., 543 Fed. Appx. 72, 74 (2d Cir. 2013) (quoting Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 172 (2d Cir. 2005)).  Loss causation cannot be proven where "[t]he loss in value of the stock occurred gradually over the course of the entire class period, and the stock lost most of its value before" the event of corrective disclosure.  60223, supra. at 461.  See also, Central States, supra. (quoting 60223, supra.).  Furthermore, loss causation is insufficient where "[t]he complaint does not even refer to the phenomenon of the gradual loss of the stock's value, much less attempt to explain it as related to loss causation."  Id.; Central States, supra.

Here, each the Hexin Plaintiffs and St. Hudson Plaintiffs allege that Singularity's shares reached a peak price of $19.86 on April 4, 2022, and closed at a low of $4.80 on May 5, 2022 after the Hindenburg Report was released.  Mahon Aff. **Exhibit A** at ¶57; **Exhibit C** at ¶61.  However, this only tells one part of the story, and neither of the Plaintiffs Groups explain the true activity of

18

the share price between April 4, 2022 and May 5, 2022, nonetheless any activity that may have occurred between April 4, 2022 and May 4, 2022, the day before the Hindenburg Report was published.  The bullet points below show how Singularity's stock reacted in the days after its peak value, based on closing prices for that day:

- April 5, 2022 - $17.00 a share

- April 7, 2022 - $19.78 a share

- April 8, 2022 - $12.65 a share

- April 11, 2022 - $7.08 a share

- April 13, 2022 - $8.41 a share

- April 14, 2022 - $6.46 a share

- May 4, 2022 - $6.75 a share

Mahon Aff. **Exhibit J.**

In the time period between April 4, 2022 and May 4, 2022, Singularity's stock cratered prior to the supposed corrective disclosure.  "[T]o establish loss causation, Dura requires plaintiffs to disaggregate those losses caused by changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, from disclosures of the truth behind the alleged misstatements."  Central States, 543 Fed. Appx. at 76 (quoting In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 36 (2d Cir. 2009).  Here, Plaintiffs have not met the heightened pleading standard for a loss of substantial stock value before the disclosure and after the disclosure, which is to "demonstrate that the continued decline in the stock price is 'attributable to the alleged fraud, rather than simply a continuation of the loss in value' that preceded the disclosure."  In re Moody's Corp. Securities Litig., 612 F. Supp.2d 397, 400 (S.D.N.Y. 2009) (quoting In re Merrill Lynch & Co. Research Reports Securities Litig., 568

F. Supp. 2d 349, 364 (S.D.N.Y. 2008).  Thus, Plaintiffs' claims for fraud must also be dismissed for failure to properly plead loss causation in connection with loss in share price before and after the alleged corrective disclosure.  Therefore, this court should grant the instant motion and dismiss both the Hexin Complaint and the St. Hudson Complaint with prejudice.[3]

### III.   BOTH COMPLAINTS FAIL TO STATE CLAIMS UNDER SECTION 10 OF THE SECURITIES ACT AND THE ACCOMPANYING RULE 10b-5.

"Rule 10b-5 states, in relevant part, that it is 'unlawful for any person…[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.'"  In re MBIA Securities Litig., 700 F. Supp.2d 566 (S.D.N.Y. 2010) (quoting 17 C.F.R. 240.10b-5(b)).  "[T]o state a claim under section 10(b) of the Exchange Act and Rule 10b-5, plaintiffs must plead that the defendants '(1) made misrepresentations or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which the plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.'"  In re Sanofi Securities Litig., supra. at 398-99 (quoting In re Int'l Bus. Machines Corp. Sec. Litig., 163 F.3d 102, 106 (2d Cir. 1998)).  The elements of reliance and causation are analyzed extensively in Section II, and are incorporated into this analysis by reference as if fully stated herein in support of this motion to dismiss the Section 10 and Rule 10b-5 claims.

### A.   Both Plaintiffs Groups Have Failed to Exhibit a Material Misstatement or Omission.

Courts analyze allegations regarding material misrepresentations and omissions in a two-factor test: (1) whether the misstatement or omission was material and (2) whether there was a

---

[3] Plaintiffs are also moving to dismiss the Common Law Fraud claims failure to properly plead materiality, scienter, and intent.  The arguments submitted on these issues in Section III, supra. are incorporated by reference as if fully stated herein.

duty to disclose.  In re Marsh & Mclennan Cos., Inc. Sec. Litig., 501 F. Supp. 2d 452 (S.D.N.Y. 2006).  "As the Supreme Court has made clear [,] …the concepts of materiality and duty to disclose are different." Id. (quoting Glazer v. Formica Corp., 964 F.2d 149, 156 (2d Cir. 1992) (alternations in original); In re Time Warner Inc. Sec. Litig., 9 F.3d 159, 267 (2d Cir. 1993)).  "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak."  In re Marsh & Mclennan, supra. at 469 (quoting Chiarella v. United States, 445 U.S. 222, 235 (1980).

### i.     Material Misstatement or Omission.

"At the pleading stage, a plaintiff satisfies the materiality requirement rule of Rule 10b-5 by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions."  Ganino v. Citizens Utilities Co., 228 F.3d 154, 161 (2d Cir. 2000) (internal citations omitted).  The Courts in the Second Circuit have "consistently rejected a formulaic approach to assessing the materiality of an alleged misrepresentation" but also stated that "when presented with a Rule 12(b)(6) motion, 'a complaint may not be properly dismissed…on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'"  In re Marsh & McLennan Companies, Inc., 501 F. Supp.2d 452, 468 (S.D.N.Y. 2006) (citing Ganino, supra. at 162 (quoting Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)).  When analyzing alleged omissions, the Supreme Court has set forth a test that "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  Basic, Inc. v. Levinson, 485 U.S. 224, 231 (1988) (citing TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438 (1976)).

As noted extensively in Section II(A), <u>supra.</u>, Plaintiffs allege there were no omissions relating to 1) outstanding warrants because the warrants were filed with the SEC and in a form to place parties on notice they were still active; 2) allegations regarding a failed reverse merger and a discrepancy over $3.5 million dollars in a lawsuit that was dismissed before the instant litigation, and 3) allegations regarding criminality in China. All of these facts were extensively analyzed, as publicly available to both Plaintiffs Groups that conceded a contractual duty of due diligence. Thus, there were no material misstatements or omissions. Furthermore, there were no misstatements with regard to Mr. Jie's background nor was there any duty to disclose. The Complaints set forth statements that were mere puffery, which is inactionable under 10b-5 and does not carry with it a duty to disclose. <u>Novak v. Kasaks</u>, 216 F.3d 300 (2d Cir. 2000). Here, the classification that Mr. Jie "is an outstanding executive" with forward looking statements to lead the company do nothing to exhibit any duty, nor do they carry any statements that would be actionable misstatements. The statement did not state that Mr. Jie was a law-abiding citizen or has never been involved in any litigation. This was simply a statement of hope that Mr. Jie would lead the company to a bright future, which is not enough. This is because "courts have identified declaration[s] of intention, hope or projections of future earnings as the hallmarks of inactionable puffery." <u>In re Moody's Corp. Securities Litig.</u>, 599 F. Supp. 2d 493, 508 (S.D.N.Y. 2009).

**ii.**    **<u>The Plaintiffs Have Not Established a Duty To Disclose.</u>**

It is not enough, however, to state that material information was not disclosed, as it "is insufficient to state an actionable misrepresentation absent a duty to disclose." <u>In re Marsh & Mclennan Companies</u>, <u>supra</u> at 469. "As the Supreme Court has made clear in insider trading cases, the concepts of materiality and duty to disclose are different." <u>Glazer v. Formica Corp.</u>, 964 F.2d 149, 156 (2d Cir. 1992) (citing <u>Chiarella v. United States</u>, 445 U.S. 222, 235

22

(1980).  Disclosure of a fact "is not required…merely because a reasonable investor would very much like to know that fact. Rather, an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts."  In re Time Warner Securities Litig., 9 F.3d 259, 267 (2d Cir. 1993) (citing Basic, Inc., supra.; Glazer, supra.). The duty of an entity to disclose only "arises in limited situations." In re Marsh & McLennan Companies, Inc., supra. at 469.

With regard to uncharged criminal conduct, "the securities laws do not impose a general duty to disclose corporate mismanagement or uncharged criminal conduct." In re ITT Educ. Servs, Inc., 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012) (quoting In re Marsh & Mclennan, Inc., supra. at 469. With regard to alleged omissions, they "must be 'sufficiently connected to Defendants' existing disclosures to make those public statements misleading.'" Id. (citing In re Marsh & Mclennan, Inc., supra.).  The duty to disclose can arise out of statute or of correcting misleading statements.  Id.  "The critical consideration for those courts in determining whether a corporation must disclose mismanagement or uncharged criminal conduct is whether 'the alleged omissions…are sufficiently connected to defendants' existing disclosures to make those public statements misleading.'" In re. Sanofi Securities Litig., 155 F. Supp.3d at 403 (quoting In re Marsh & Mclennan, Inc., supra.; and citing In re FBR Securities Litig., 544 F. Supp.2d 346, 357 (S.D.N.Y. 2008)).

> Additionally, where plaintiffs allege that a defendant's unlawful conduct renders a statement false or misleading, they must plead facts supporting the conclusion that the conduct, in fact, was unlawful. See, Das, 332 F. Supp.3d at 803 (holding that where "securities fraud claims are based on failure to disclose uncharged illegal conduct, 'the complaint must state a plausible claim that the underlying conduct occurred.' ") (quoting Menaldi v. Och-Ziff Capital Mgmt. Group LLC, 164 F. Supp.3d 568, 578 (S.D.N.Y. 2016)); In re Axis Capital Holdings, Ltd. Sec. Litig., 456 F. Supp.2d 576, 585 (S.D.N.Y. 2006) (holding that, in such cases, "[i]f the complaint fails to allege facts[,] which would establish such an illegal scheme, then the securities law claims premised on the nondisclosure of the alleged scheme are

fatally flawed.") (emphasis omitted); <u>In re FBR Inc. Sec. Litig.</u>, 544 F. Supp.2d 346, 354 (S.D.N.Y. 2008) ("[I]n order to state a claim that defendants violated the securities laws because they failed to disclose the insider trading scheme, plaintiffs must plead the alleged trading scheme with particularity.").

<u>Mucha v. Volkswagen Aktiengellschaft</u>, 540 F. Supp.3d 269, 293 (E.D.N.Y. 2021).

### *Mr. Jie's Uncharged Alleged Criminality in China*

Plaintiffs' Complaints make a focal point of focusing on the Hindenburg Report's amplifying uncharged criminal allegations relating to Mr. Jie's business ventures in China, and that the allegations were that unverified criminal charges from China should have been reported on the Form 8-K.  However, these arguments fail for three reasons: 1) the Chinese criminal allegations were published in the United States in the English language and available, 2) there was no contractual or common law duty to disclose, and 3) Plaintiffs have failed to plead a duty to disclose the uncharged criminal conduct.

As noted in Section II(A), relating to reasonable reliance, the allegations regarding the criminality against Mr. Jie were extensively published and available in the now dismissed <u>Shanghai Nonobank</u> matter, and were reasonably available to Plaintiffs who conceded that they had a duty of due diligence and, in fact, claimed they performed extensive due diligence.

Furthermore, Plaintiffs' Complaints presumed that there was a duty to disclose and attempt to bootstrap the contractual language from the company's "representations and warranties," stating "[t]o the knowledge of the company, there are no outstanding **orders, judgments, injunctions, awards or decrees of any court, arbitrator or governmental or regulatory body against the Company…or any of their respective executive officers or directors…**"  SPA Section 3.3 **Exhibits B and D** (emphasis added).  It is apparent there were none of the above related to the alleged past criminal conduct for Mr. Jie, as the circumstances of uncharged alleged criminal conduct were not addressed in either of the Stock Purchase Agreements.  Here, Plaintiffs have

24

failed to plead facts establishing a duty to disclose uncharged criminal conduct.  Menaldi v. Och-Ziff Capital Management Group, LLC, 164 F. Supp.3d 568, 579 (S.D.N.Y. 2016).   Further, Plaintiffs have failed to "state a plausible claim that the underlying conduct occurred," Mucha, supra. (quoting Menaldi, 164 F. Supp. 3d at 578).   Finally, Plaintiffs "have not identified any specific laws Defendants violated or explained how [Defendants'] conduct ran afoul of those laws."  Mucha, supra.

Even more troubling to this Court should be the fact that the Defendant Yang Jie engaged counsel in China to perform a thorough and detailed investigation.  This due diligence, which included meeting with prosecutorial authorities and the police have returned that there were no criminal charges against Mr. Jie.  This report from Chinese Counsel shows that the underlying case that the Hindenburg Report and, consequently, both Plaintiffs Groups heavily rely, is closed and that Mr. Jie was never charged as a suspect. Mahon Aff. **Exhibit RR.**

### *The Failed Reverse Merger*

With relation to the $3.5 million dollar failed reverse merger lawsuit, the Shanghai Nonobank matter was discontinued prior to the Singularity/Sino-Global transactions with Plaintiffs, therefore that was not a pending action and the action certainly did not result in an order or judgment triggering a duty to disclose.  Mahon Aff. **Exhibit CC**.

### *The Outstanding Warrants*

The warrants for purchase of shares were previously disclosed in an SEC filing, thus the information was already in the market and presumed to be publicly available information, thus there was no further duty to disclose, and therefore no 10b-5 violation.  Investors are charged with knowledge of SEC filings, as SEC filings exist to protect the public.  In re Keyspan Corp. Securities Litig., 383 F. Supp.2d 358, 373-74 (E.D.N.Y. 2003).  Here, Singularity, then Sino-

Global, disclosed the three warrants complained of by Plaintiffs, each dated February 10, 2021, February 11, 2021, and March 14, 2018.  These warrants were fully disclosed in separate Form 8-K filings close to the entry date, and each filing contained an expiration date to place Plaintiffs, with a duty to perform due diligence, on active notice that there were unexpired warrants.  Mahon Aff. **Exhibits OO, PP, and QQ**.  Therefore, there was no further duty to disclose here.

### B.  Both Plaintiffs Groups have Failed to Properly Plead Scienter.

The PSLRA sets forth exhaustive pleading standards which require a plaintiff to "state 'with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  In re Sanofi, 155 F. Supp.3d at 405 (citing Dura Pharm, 544 U.S. at 345) (quotations omitted).  While the Second Circuit recognizes recklessness as a state of mind for scienter on top of intent, claims "based on recklessness must 'specifically allege [] defendants' knowledge of facts or access to information contradicting their public statements.  Under such circumstances, defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation.'"  In re Sanofi, supra. at 405 (quoting Novak, 216 F.3d at 308.).

Scienter can be established in two ways, by pleading facts showing either "(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness."  ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 198 (2d Cir. 2009).  For claims based on motive and opportunity, there must be allegations that the defendant "benefitted in some concrete and personal way from the purported fraud."  Id. (citing Novak, 216 F.3d at 307-08).

A corporation's "desire…to appear profitable and the desire to keep stock prices high to increase officer compensation, do[es] not constitute 'motive' for purposes of this inquiry."  Id.  To

prove motive, plaintiffs must exhibit that "corporate insiders allegedly ma[d]e a misrepresentation in order to sell their shares at a profit." Id. (citing Novak, supra. at 308).  If unable to make the motive showing, plaintiffs "could raise a strong inference of scienter under the 'strong circumstantial evidence' prong, 'though the strength of the circumstantial allegations must be correspondingly greater' if there is no motive." Id.  (citing Kalnit, 234 F.3d at 142).  "At least four circumstances may give rise to the strong inference of the requisite scienter; where the complaint sufficiently alleges that the defendants (1) 'benefitted in a concrete and personal way from the purported fraud'; (2) 'engaged in deliberately illegal behavior'; (3) 'knew facts or had access to information suggesting the public statements were not accurate'; or (4) 'failed to check information they had a duty to monitor.'" ECA, supra. at 198-99 (quoting Novak, 216 F.3d at 311).

In the instant matter, Plaintiffs' Complaints have failed to adequately plead scienter under either the motive test, the opportunity test, or under the "strong inference standard."  Here, there was no personal gain for Mr. Jie from the sale of stock, or otherwise, a fact neither of the Complaints plead.  Furthermore, it doesn't show that Mr. Jie benefited personally, nor does it show that he engaged in deliberately illegal behavior by managing a company, nor did he have access to information showing the statements were inaccurate (the information as already public) and nor was there a duty to check information.  At most, the Complaints show that Singularity's prices were inflated, an argument the Supreme Court rejected in Dura Pharm and the Second Circuit repeatedly rejects.  See, e.g. ECA Local 134 IBEW, supra.  Furthermore, the Complaints are devoid of any additional information supporting the claims of scienter.

### IV.  **BOTH PLAINTIFFS' GROUPS HAVE FAILED TO PLEAD SUFFICIENT FACTS BASED ON INDEPENDENT INVESTIGATIONS, INSTEAD RELYING ON A REPORT OF A SHORT SELLER WITH A BASIS ON INADMISSIBLE FACTS.**

27

**A.   The Hindenburg Short Seller Report was Based Solely on Unverified Information and Not Sufficient to Premise A Claim.**

In <u>Bartesch v. Cook</u>, 941 F. Supp.2d 501 (D. Del. 2013), a news article, similar to the Hindenburg Report, was written by an executive at a company in active litigation with the defendant and subject of the 10b-5 suit involved in a lawsuit over the subject matter of the article. The Court noted the article author's potential bias as disclosed by the Plaintiffs and noted "[t]his concession might suggest that the author has an incentive to disparage [the company] and, at least, suggests that the author does not have inside or personal knowledge of [the company's] business strategy." The court concluded the article was "not sufficiently 'reliable' to meet the pleading requirements of the PSLRA." <u>Id.</u> (internal citations omitted). The court also noted that "articles can form the basis for adequate pleading under the PSLRA if the article were sufficiently detailed to indicate their reliability and are based on an independent investigative effort." <u>Id.</u> (quoting <u>McKesson HBOC, Inc. Sec. Litig.</u>, 126 F. Supp.2d 42, 80 (D. Del 2002).

In <u>Harris v. AmTrust Fin Servs., Inc.</u>, 135 F. Supp.3d 155 (S.D.N.Y. 2015), the plaintiffs brought suit "[r]elying almost entirely on a negative report published by a short seller." <u>Id.</u> at 159. That court ultimately rejected the reliability of a short-seller report, noting a short seller report can be a corrective disclosure, however, there must be some misstatement or omission that the short-seller report discloses. <u>See, id.</u> at 173, n. 30. Short sellers "operate by speculating that the price of security will decrease." <u>In re Longtop Financial Tech. Security Litig.</u>, 910 F. Supp.2d 561, 577 (S.D.N.Y. 2012). Short sellers "can perform a useful function by bringing information that securities are overvalued to the market [,] …they have an obvious motive to exaggerate the infirmities of the securities in which they speculate." <u>Long Miao v. Fanhua, Inc.</u>, 442 F. Supp.3d 774, 801 (S.D.N.Y. 2020) (quoting <u>Longtop</u>, <u>supra.</u>).

As a primary matter, the Hindenburg Report, upon which both Plaintiffs Groups rely, is based heavily on unverified news reports and confidential witnesses, evidence which cannot support a pleading in its current form, Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000), as the news reports relied on by Hindenburg are not "described…with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged."  Furthermore, "plaintiffs have [not] pleaded enough facts to support their belief" to supplement the allegation in the Hindenburg Report. Id. at 314.

Even more troubling, the Plaintiffs rely on the Hindenburg report, which, consequently, alleges pleadings from an investigation in China without a judgment related to Mr. Jie's alleged criminality.  Furthermore, these documents lead to documents that were merely obtained as a result of Google Translation.  The alleged English translations upon which the Hindenburg Report relies, and the original source documents, do not meet the admissibility criteria as they are not "duly certified" pursuant to 18 U.S.C. § 3491, and thus do not stand as a foundation for any allegations in the action.  Furthermore, the original documents and translations do not meet the admissibility criteria as set forth in Fed. R. Civ. P. 44(a)(2) as the documents do not appear to be "an official publication of the record," do not contain a "final certification of genuineness," and the parties have not "had a reasonable opportunity to investigate [the] foreign record's authenticity and accuracy."   Here, the Complaints suffer the same infirmities as the Hindenburg Report, as complaints based on short-sale reports are ultimately analyzed by the reports themselves and not what is pled in the complaint.  See, Long Miao v. Fanhua, Inc., 442 F. Supp. 3d 774, 801-804 (S.D.N.Y. 2020).

**B.** **Neither Plaintiffs' Counsel Has Exhibited An Independent Investigation was Performed, and Each Complaint was based Solely on Hearsay and therefore Both Complaints are Insufficient.**

Because of the hearsay nature of the Hindenburg report as rank unverifiable hearsay, this triggered a duty on the part of both Plaintiffs' counsels to independently verify the statements and to plead same independent investigation. Long Miao, supra. at 809 (dismissing a complaint because the plaintiff's counsel "appear[ed] not to have done any independent investigation [of matters in a short seller report], having chosen to piggyback [on the short seller report.]"). Furthermore, neither complaint pleads even an attempt to corroborate any of the facts alleged by the Hindenburg Report, which even then, would be insufficient as a matter of law. In re Draft Kings Sec. Litig., No. 21-cv-5739, 2023 WL 145591 (S.D.N.Y. 2023). Defendant has submitted a report from a China based law firm, Beiging Zhonglun W&D Law Firm (hereinafter the "Zhonglun Firm" (Mahon Aff. **Exhibit RR**), to investigate whether there were pending criminal charges against Mr. Jie. According to the Zhonglun Firm's report, that firm's attorneys met with the prosecutorial authorities in China as well as the police investigators and confirmed that Mr. Jie did not commit any crimes, nor were there any charges pending against Mr. Jie. Mahon Aff. **Exhibit RR**. The Zhonglun Firm then goes on to explain that the only legal counsel that ever contacted the prosecutor's office alleged they were from the SEC and the New York Stock Exchange. Id. The report further states that the prosecutor in China stated that they "could not verify the identity of the other party and replied that he could not provide [the information requested.]" Id. The report concludes that Mr. Jie was not the subject of any criminal trial, there are no pending charges in China, and that the underlying case is closed. Id.

It is apparent that defense counsel engaged in the type of due diligence that the law requires when faced with hearsay reports from short sellers, like the Hindenburg Organization, which have

a financial incentive.  It is in circumstances like this that counsel sees first-hand the danger of relying on rank hearsay.  Therefore, both Complaints should be dismissed.

## V.   THE ALLEGATIONS FOR LIABILITY UNDER SECTION 20(a) OF THE EXCHANGE ACT ARE ALSO INSUFFICIENT BECAUSE THERE IS NO UNDERLYING ADEQUATELY PLED VIOLATION OF SECTION 10 OR RULE 10b-5.

Here, Plaintiffs have not exhibited any underlying violations under Section 10(b) or Rule 10b-5.  Therefore, "[i]n the absence of a primary violation of Section 10(b) or Rule 10b-5, plaintiffs cannot state a claim for controlling person liability under Section 20(a) of the Exchange Act." In re Keyspan Corp. Sec. Litig., 383 F. Supp. 2d 358, 389 (E.D.N.Y. 2003) (citing Salinger v. Projectavision, Inc., 972 F. Supp. 222, 238 (S.D.N.Y. 1997); Rich v. Maidstone Fin., Inc., No 98-cv-2569, 2001 WL 286757 at *11 (S.D.N.Y. 2001).  Thus, the claims pled under Section 20(a) should also be dismissed.

## <u>CONCLUSION</u>

For the reasons stated herein, Defendant Yang Jie respectfully requests that this Court grant the instant motion in its entirety and dismiss all claims asserted against Mr. Jie with prejudice.

New York, New York
Dated: February 10, 2023

**BECKER & POLIAKOFF, LLP**

By:     /s/ James J. Mahon
        James J. Mahon, Esq. (JM5405)

        /s/ Adam K. Gallagher
        Adam K. Gallagher, Esq. (AG9289)

        */s/ Samantha A. Lesser*
        Samantha A. Lesser, Esq. (5757505)
        45 Broadway, 17th Floor
        New York, New York 10006
        Phone: 212-599-3322
        Fax: 212-557-0295

32